IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | | |
|---|---|---|
| MARSHALL SPIEGEL, individually and on behalf of a class of those similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) ) | Judge: _____ |
| ENGAGETEL, DENNIS CARLSON, ARASH AKHAVAN, ARG GROUP, WYOMING CORPORATE SERVICES, GERALD PITTS, JOHN DOES 1-10. | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

1.   Plaintiff, Marshall Spiegel ("Plaintiff"), brings this class-action complaint against Defendants, in order to obtain redress for all persons who have received unsolicited robocalls on their cellular telephones, and/or landlines for individuals on the federal do not call list. The calls made to Plaintiff, and the class, were made in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227(b)(1)(A)(iii). Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

2.   Plaintiff, MARSHALL SPIEGEL, ("Plaintiff," or "Spiegel"), is a natural person, and a citizen of the State of Illinois.

3.      Defendant, ENGAGETEL, INC., ("EngageTel"), is incorporated in the State of Wyoming. Its "principal place of business," appears to be a post-office box in Novato, California.

4.      EngageTel aids and abets unscrupulous telemarketers by providing caller ID "spoofing" services, in order that telemarketers and those making robocalls can misrepresent and conceal their true identities in an effort to trick consumers into answering calls and/or "harvesting" valid numbers.

5.      Defendant, DENNIS CARLSON, ("Carlson"), is the individual who operates EngageTel. He is believed to be a citizen of the State of California.

6.      EngageTel is under-capitalized, disregards corporate formalities, is the mere alter ego of Carlson, and as more fully alleged herein was controlled and operated in such as manner as to commit fraud. The corporate veil should thus be pierced.

7.      Defendant WYOMING CORPORATE SERVICES, INC., ("WCS"), is engaged in the business of providing telemarketers with so-called "shelf corporations." According to Reuters, "shelf companies are set up by firms like Wyoming Corporate Services, then left on the 'shelf' to season for years… The older they are, the more expensive, like Scotch whisky." These shelf corporations are then sold to owners "looking for a quick way to secure bank loans, bid on contracts, and project financial stability." *See*, http://www.reuters.com/article/2011/06/28/us-usa-shell-companies-idUSTRE75R20Z20110628.

8.      Shelf corporations are created, incorporated, and maintained by WCS for the purpose of sale to individuals that wish to create a false impression about how long the "shelf" corporation has been in business. As alleged herein, Plaintiff maintains it is a

violation of the Illinois Consumer Fraud act to sell such corporations, as it is an unfair and deceptive business practice.

9. Defendant GERALD PITTS, ("Pitts"), is the individual who owns and operates WCS. Pitts is believed to be a citizen of Wyoming.

10. WCS is under-capitalized, disregards corporate formalities, is the mere alter-ego of Pitts, and was controlled and operated in such as manner as to commit fraud. The corporate veil should thus be pierced.

11. WCS establishes "shell" corporations used to commit fraud and hide assets. According to an investigation by the Reuters agency, a prior headquarters for WCS – 2710 Thomes Ave (a 1700 square foot house) – claimed to be the "office" for over 2000 companies. Reuters reported:

> Neighbors say they see little activity there besides regular mail deliveries and a woman who steps outside fro smoke breaks. Inside however, the walls of the main room are covered from floor to ceiling with number mailboxes labeled as corporate "suites." A bulky copy machine sits in the kitchen. In the living room, a woman in a headset answers calls and sorts bushels of mail.

*See*, http://www.reuters.com/article/2011/06/28/us-usa-shell-companies-idUSTRE75R20Z20110628. The factual statements contained in this investigation are incorporated by reference into this Complaint.

12. As noted in the report referenced in paragraph 11, WCS creates companies, sets up bank accounts for those companies, adds lawyers as corporate directors to attempt to shield fraudulent activities with attorney-client privilege; and even appoints stand-in directors and officers as high-ranking as CEO. But all of this is a sham to create a veneer of legitimacy for undercapitalized companies run by individuals

seeking to avoid accountability for their actions, or to use as a "decoy" or "fall guy" (See paragraph 13, below).

13. Among its offerings is a variety of shell known as a "shelf" company, which comes with years of regulatory filings behind it, lending a greater feeling of solidity.

14. According to the Reuters report, WCS advertised to potential clients: "A corporatio3n is a legal person created by state statute that can be used as a fall guy, a servant, a good friend, or a decoy…A person you control but cannot be held accountable for it's actions. Imagine the possibilities!" *See*, http://www.reuters.com/article/2011/06/28/us-usa-shell-companies-idUSTRE75R20Z20110628.

15. WCS has registered companies that have sheltered real estate assets controlled by the jailed former prime-minister of Ukraine, another indicted for helping on-line poker operators evade the U.S. ban on Internet gambling, and a third company that was banned from government contracting for selling counterfeit truck parts to the Pentagon.

16. Defendant, ARASH AKHAVAN, ("Akhavan"), is an individual who held himself out to EngageTel, as a representative of "ARG Group." In so doing he, or someone acting on his behalf using the name/alias "Mark Diskin" supplied the address of AGR Group as his business address.

17. Defendant ARG GROUP, ("ARG"), is an entity that Akhavan claimed to be an agent of when engaging EngageTel for the purposes of purchasing Caller ID spoofing services for the purpose of misrepresenting and concealing his actual identity. In

so doing, he also represented he was an agent of AGR Group by using their business address in Florida. Spiegel does not know whether Akhavan had a relationship with AGR Group, as he represented, or whether the transposition of the letters "G" and "R" were intentional or a mere clerical error. There does not appear to be a company called ARG Group, based on undersigned counsel's investigation.

18. In contracting with EngageTel, Akhavan, or someone acting on his behalf (on information and belief using the name/alias "Mark Diskin"), purported to be an agent of "ARG Group," with business offices at 13100 56th Court, Ste. 705, Clearwater, FL 33760. 13100 56th Court, Ste. 705, Clearwater, FL 33760 is an address for a company known as AGR Group. AGR Group's business is the telemarking of energy services.

19. Investigation by Spiegel's counsel in connection with EngageTel's claim that the wholesale numbers at issue were sold to a company doing business at 13100 56th Court, Ste. 705, led counsel to contact an attorney for AGR Group, Mitchell Roth.

20. On October 28, 2014, Mr. Roth, on behalf of AGR Group, send counsel for Plaintiff an email that stated:

> I shared the substance of our conversation last week with my client, and forwarded to it the complaint and the subpoena response from EngageTel as well. In short, my client's investigation revealed that it does not do business with Ameren Energy, that it has never transacted business with EngageTel and has never transmitted the telephone numbers 847-592-8850, 8798, 8804, or 9982 in the caller ID field of any of its calling campaigns.
>
> As I mentioned to you last week, last year, AGR was the victim of a spoofing campaign by which a third party falsely transmitted called ID information that led call recipients to conclude that AGR initiated the calls in question. AGR notified law enforcement agencies including the FBI, FTC and the California Attorney General of the spoofing campaign and believes that the motive behind this campaign was retaliation for AGR's submission of a complaint to the FTC which brought to light unfair business practices of the party responsible for the campaign.

5

AGR has a detailed compliance program to guard against the initiation of unlawful calls, takes the allegations seriously, and has a history of vigorously defending these lawsuits. Feel free to call me if you want to discuss further.

21.  Counsel for Spiegel responded, on October 28, 2014:

I am a little disappointed with this response, as it does little more than reiterate what you told me on the phone Friday, I was expecting copies of the police reports, etc., the FTC complaint and the identity of the "competitor" you claim did this. Please provide the name of the competitor, so I can investigate further.

22.  Also on October 28, 2014, counsel for Spiegel received an email from "EngageTel Subpoena Compliance," stating:

We regret this unfortunately situation and apologize to AGR Group and yourself for any inconvenience. The address for ARG group (our client) that was provided for the subpoena was is not what is listed in the attached master services agreement, rather it was an updated address communicated to us by our client at a later date. We don't have an answer to the question as to why the company name does not match with the provided business address. At the end of the day, we can only assume that the information provided to us by our clients for their business is accurate. Please feel free to contact out client's representative directly for an answer. He is our client's contact information for him: Arash Akhavan 310-779-7779. Arash_a656@yahoo.com. Sincerely, EngageTel Subpoena Compliance.

23.  Spiegel's counsel responded:

Thanks. But the signature on the document does not match the name you gave me. I really need all the documents you have in your possession related to these entities so I can track down what happened here. Anything related to Mr. Diskin (who appears to have signed it), or Anakan [sic], letters, correspondence. The address you provided is a Regus Office Suite in NY, yet the number is California. I'm fearful there may be a scam going on here, and I need to unwind the players. Did they pay you? If so, please provide info linking them to a financial institution so I can subpoena that entity for their actual info.

## JURISDICTION AND VENUE

24.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because it is a civil action arising under the federal laws of the United States, namely 47 U.S.C. §227, the Telephone Consumer Protection Act. Venue is proper

6

in this District under 28 U.S.C. § 1391 (b)(2) because Plaintiff resides in this District, Defendants have committed tortious acts within this District, and several of the Defendants do business in this District.

### FACTS PARTICULAR TO PLAINTIFF

25. Plaintiff is on the national "do not call" list.

26. On November 4, 2013, plaintiff received a telemarketing call on his home telephone from 847-592-8850.

27. On November 14, 2013, plaintiff received a telemarketing call on his home telephone from 847-592-8850.

28. On November 26, 2013, plaintiff received a telemarketing call on his home telephone from 847-592-8850.

29. On information and belief, plaintiff received numerous other calls.

30. The calls sought to sell plaintiff alternative energy services.

31. The calls were placed using an automatic dialer and a recorded or artificial voice.

32. On information and belief plaintiff may have received other calls from defendants. Plaintiff incorporates those calls, as may be revealed by discovery, in this Complaint.

33. Originally, based on reports on the Internet, and the investigation of his then-counsel, Plaintiff believed the calls were made on behalf of Ameren, an energy company. He thus filed suit against Ameren.

34. In that suit, Plaintiff's then-counsel issued a subpoena to EarthLink, the telephone carrier associated with the numbers.

35. EarthLink responded by referring Plaintiff's then-counsel to Defendant EngageTel, claiming EngageTel was the subscriber to the numbers.

36. A subpoena was issued on EngageTel, who responded via letter in September 2014.

37. This letter identified "ARG Group," with a business address for AGR Group, as the "wholesale" purchaser of the numbers – i.e., the entity that bought numbers for the express purpose of misrepresenting its identity on the caller ID screen of consumers' phones.

38. AGR Group does telemarket energy services, and has been sued several times for allegedly violating the TCPA.

39. After being sued, Ameren, through counsel, denied any involvement in making the calls. Plaintiff, however, has no knowledge of whether Ameren is telling the truth in this regard. Ameren supplied an affidavit claiming non-involvement. This affidavit, however, does not disclaim that Ameren is involved in the supply of energy to Illinois, and Ameren refused to sit for a deposition (prior to resolution of a motion to dismiss) to allow Plaintiff to question it about the assertions in the affidavit. Plaintiff's motion to compel a deposition, before resolution of Ameren's motion to dismiss, was denied. Plaintiff thus has no idea if the statements contained in the affidavit are true or false, and had no opportunity to test the truth of those statements.

40. Although AGR Group has claimed it was not acting on behalf of Ameren, it has also claimed that it was not involved in making the calls to Spiegel (yet has not done so under oath, and has refused to supply specifically-requested documents that might substantiate its claims). Thus, Plaintiff has no personal knowledge, or evidence,

that allows Plaintiff to form a belief as to the truth of AGR Group's unsworn statements, through counsel, of non-involvement.

41. As Plaintiff's undersigned counsel continued to press for answers as part of his pre-suit investigation, EngageTel subsequently repudiated the statements in its September letter, which was supplied in response to a federal subpoena. In so doing, it tendered another letter (which it back dated to September 2014) claiming the wholesale purchaser of the numbers was not ARG Group, at AGR Group's address, acting through a "Mark Diskin." Instead, it claimed Akhavan purchased the numbers. EngageTel supplied an address for "Montage Mortgage," claiming this to be Akhavan's address. This address was different from the Regus office suite address also claimed to be associated with Akhavan.

42. Akhavan also sells energy services, but it is unknown whether Akhavan was ever acting on behalf of AGR Group, Ameren, EngageTel, or any other entities.

43. EngageTel admits that it "provides services including virtual telephone numbers of the purpose of Caller ID only."

44. In other words, EngageTel sells (or licenses) telephone numbers and services for the purpose of misrepresenting one's identity on caller ID. In sum, EngageTel traffics in "spoofing" services.

45. Telephone calls are not originated with the telephone numbers sold or licensed by EngageTel.

46. EngageTel is not the underlying carrier for the telephone calls for which it provides "Caller ID services."

47. EngageTel is not the underlying carrier for any telephone calls where the indicated telephone numbers appear in a call recipient's called ID display.

48. As of at least September 15, 2014, and at the time of the events alleged in this complaint, EngageTel claims it did not know whom the end subscriber(s) were for numbers 847-592-8850, 847-592-8798, and 847-592-8804.

**COMMON ALLEGATIONS OF FACT**

49. Defendants create and use "spoofed" numbers in order to manipulate the caller ID field to lead consumers to believe the calls are locally originated. For instance, consumers have complained on the Internet, on sites like 800notes, that the number 973-273-7862 (a New Jersey number) has been associated with robocalls whereas in the called ID field appeared the name "Energy Choice Assistance." Pre-suit investigation on internet sites dedicated to allowing consumers to post the numbers of telemarketing calls revealed numerous complaints and association to Defendants, including:

(a) On November 10, 2010, a consumer using the handle "Spam Avenger" posted the results of an investigation from a call claiming to originate from 401-558-0022. This number was a spoofed ID from a company called Defender Security, number 317-222-3395. After identifying 16 calls from June 2004 through April 2010, the user noted: "This is a real scam, as in trying to charge your credit card for things you never get. They employ EngageTel of Wyoming to manage their "do not call" list, 307-223-0458. A lookup of that number gives you "TeleCall, but that is an illegal DBA name being used by EngageTel to confuse them with the defunct Intelecall

(b)     Communications, Inc. DBA TeleCall Services. EngageTel supply "compliance services" to the phone spamming industry.

(b)     A user, "PSellers" noted in this forum, on or about November 28, 2012: The sales rep calling from this number gave the name of the business as "Energy Choice Assistance." The whole schitck is to appear to be a government service providing relief post-Sandy. She would not provide any more information about the company (no url, corporate office location, nothing); she said she was not allowed to do that. Also said officer are on Water Street across from the Apple Store and that they are Better Business Bureau approved. None of this is true. NOT BBB listed or approved. NO Apple Store on Water Street in Manhattan.

(c)     Fed UP noted, on December 5: "The company owning this line is EngageTel based in Cheyenne Wyoming direct line 307-223-0458. But please final an FCC complaint and State NJ complaint. Log the day and time of the call. I've filed police incidence report and plan to pursue small claims court. Further research: EngageTel; is registered in Wyoming by Gerald Pitts, who specializes in setting up corporations that shield the real owners. The Owner of EngageTel is Dennis Carlson…File an FCC complaint and pursue a claim to stop it!

(d)     On June 12, 2013, "Slartibartfast" noted on 800 notes, in connection with a call claimed to be made from number 706-844-1247: "yet another number from the creeps at EngageTel. As best I can tell, EngageTel seems to front for a variety of scammers and schemers [sic]. Home warranties,

Car Warranties, and Alarm Systems seem to be among the questionable offerings. Whether or not EngageTel is the originator of the sketchy services, or as they seem to claim, merely a service provider to such activities, it seems to me they are a merchant in slime. An internet search of EngageTel will reveal numerous complaints, as well as some B2B site reviews that look to my cynical eyes like shills for EngageTel. Either that, or the site is infested by their sleazoid customers. I have seen nothing that would lead me to believe that EngageTel has any "legit" customers, and as it appears, they are violating the DNC and TCPA with reckless abandon, that would make sense.

50. In order to redress these injuries, Plaintiff, on behalf of himself and a class of similarly situated individuals, sues under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*., and for consumer fraud.

## CLASS ALLEGATIONS

53. Plaintiff brings this action as a class action on behalf of the following classes of individuals, subject to the exclusions set forth in paragraph 54:

(A) Class A-1 consists of: (1) all persons; (2) whose phone numbers are listed on the national do-not-call list; (3) who have received, during the four years prior to the filing of this action; (4) by or on behalf of Akhavan or ARG Group; and (5) Defendants cannot provide a writing evidencing express consent to such calls.

(B) Class A-2 consists of: (1) all persons; (2) whose phone numbers are listed on the national do-not-call list; (3) who have received, during the

four years prior to the filing of this action; (4) by or on behalf of the subscribers to telephone numbers 847-592-8850, 847-592-8798, or 847-592-8804; and (5) Defendants cannot provide a writing evidencing express consent to such calls.

(C) Class B consists of (1) all persons; (2) who received a call that was "spoofed" by Engagtel – i.e., the call was originated and transmitted in a fashion such that the called ID field displays a number different than the actual originating number.

54. Excluded from the definitions of the Classes are: (a) Defendants and officers, agents and employees of the Defendants, (b) the judicial officers assigned to preside over this case, and (c) Plaintiff's counsel.

55. *Numerosity*: Members of the proposed class are so numerous that their individual joinder is impracticable. The precise number of members is unknown to Plaintiff at this time, but based upon reasonable estimates the class includes thousands of individuals. The true number of proposed class members is, however, likely to be known by Defendants, and thus, class members may be notified of the pendency of this action

56. *Commonality*: There are numerous questions of law and fact common to Plaintiff and the proposed class; those questions predominate over any questions that may affect individual Class members, and include the following:

(a) Whether Defendants violated the TCPA

(b) Whether to pierce the corporate veils of EngageTel and hold Carlson personally liable

(c) Whether to pierce the corporate veil of Wyoming Corporate Services and hold Pitts personally liable

13

(d) Whether it is an unfair or deceptive practice to sell "spoofing" services

(e) Whether it is an unfair or deceptive practice to sell "shelf" corporations

(f) Whether EngageTel and/or Carlson are directly liable under the TCPA for "wholesaling" spoofed numbers

(g) Whether EngageTel and/or Carlson are liable for the conduct alleged based on conspiracy liability

57. *Typicality*: Plaintiff's claim is typical of the other members of the proposed classes.

58. *Adequacy*: The named Plaintiff will adequately represent the interests of the proposed class. He has been treated in the same manner as other proposed class members by Defendants who sold a gift certificate with an illegally short expiration dates. Plaintiff is committed to vigorously prosecuting this action and Plaintiff has retained attorneys with consumer law and class action experience who are well qualified to handle lawsuits of this type. Plaintiff has no interests that are adverse to those of the proposed class.

59. *Predominance*: This case should be certified as a class action because the common questions of law and fact concerning Defendants' liability for selling car wash certificates with expiration dates less than 24 months from the date of purchase predominate over any other issues.

**60.** *Superiority*: A class action is the only realistic method available for the fair and efficient adjudication of the claims of the proposed class. The expense and burden of individual litigation makes it impracticable for members of the proposed class to seek redress individually for the wrongful conduct alleged in this Complaint. Were each individual member required to bring a separate lawsuit, the resulting multiplicity of

proceedings would cause undue hardship and expense for the litigants and the Court, and create the risk of inconsistent rulings, which would be contrary to the interest of justice

## COUNT I

## VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT

61. Plaintiff re-alleges and incorporates by reference Paragraphs 1-60 of this Complaint.

62. A private right of action for "do not call" violations is conferred upon any person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed by the FCC. 47 U.S.C. §227(c)(5) provides:

> **(5) Private right of action. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State--**
>
> **(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,**
>
> **(B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or**
>
> **(C) both such actions.**
>
> **It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.**

63. A private right of action for telemarketing robocalls to a residence provided by 47 U.S.C. 227(b)(3), which provides:

**Private right of action.**

**A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State –**

**(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**

**(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or**

**(C) both such actions.**

**If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

64. Plaintiff and each class member are entitled to statutory damages.

65. Defendants violated the TCPA even if their actions were only negligent.

66. Defendants should be enjoined from committing similar violations in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the class and against Defendants for:

    (a) Actual damages;

    (b) Statutory damages;

    (c) An injunction against further violations;

    (d) Costs of suit;

    (e) Such other or further relief as the Court deems just and proper.

### COUNT II
### UNFAIR PRACTICE UNDER 815 ILCS 505/2
### AS TO ALL DEFENDANTS

67. Plaintiff incorporates and realleges paragraphs 1-60, above.

68. The Illinois Consumer Fraud and Deceptive Business Practices Act prohibits both deceptive and unfair business practices on the part of entities conducting business with consumers within the State of Illinois.

69. The ICFA codifies longstanding Illinois policy against abusive practices that offend public policy.

70. The Illinois Consumer Fraud Act "is a regulatory and remedial statute intended to protect consumers . . . against fraud, unfair methods of competition, and other unfair and deceptive business practices."

71. In interpreting unfair conduct under the Consumer Fraud Act, Illinois courts look to three considerations of whether conduct is unfair under the Consumer Fraud Act:

> (1) if it offends public policy as established by statutes, the common law or otherwise, or in other words, whether it is at least within the penumbra of some established concept of unfairness (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers.

72. A court may find unfairness even if the claim does not satisfy all three criteria.

73. Defendants' practices, as alleged herein, violates the public policies embodied by the TCPA.

74. Defendants' practices, as alleged herein, violate the public policies of privacy, and private enjoyment of one's home.

75. Defendants' practices, as alleged herein, violate the public policies of responsibly monitoring the quality of goods and services offered under one's mark.

76. The ICFA provides, in pertinent part, that "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use

or employment of any deception fraud, false pretense, false promise, misrepresentation or *the concealment, suppression or omission of any material fact*, with intent that others rely upon the concealment, suppression or omission of such material fact" are "unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2 [emphasis added].

77. Defendants have engaged in unfair and deceptive acts or practices to the extent they have engaged in the following acts and practices:

(a) the sale or use of numbers for the purpose of "spoofing,"

(b) the sale or use of numbers for the purpose of misrepresenting and concealing the true identify of the caller

(c) the sale or use of "shelf" corporations for misrepresenting corporate longevity and concealing the true identity of fraudfeasors, as alleged herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests of this Court enter judgment in his favor and in favor of the Class and award the following relief:

A. An Order certifying the proposed class, appointing Plaintiff as Class Representative, and appointing the undersigned counsel of record as Class Counsel;

B. An Order declaring the Defendant's practices and policies to be illegal and enjoining the further sale of car wash gift certificate with illegal expiration dates;

C. An award of reasonable attorneys' fees and costs to Plaintiff's Counsel.

Respectfully Submitted,

s/ Christopher V. Langone
Christopher V. Langone
*Attorney for Plaintiff*
langonelaw@gmail.com
(607) 592-2661