IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARSHALL SPIEGEL, individually and on behalf of a class of those similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:15-cv-01809 |
| v. | ) ) | |
| ENGAGETEL, DENNIS CARLSON, ARASH AKHAVAN, ARG GROUP, WYOMING CORPORATE SERVICES, GERALD PITTS, JOHN DOES 1-10, | ) ) ) ) ) | Hon. Joan B. Gottschall |
| Defendants. | ) ) | |

*MEMORANDUM OPINION AND ORDER*

Plaintiff Marshall Spiegel ("Spiegel") brings this class-action lawsuit on behalf of himself and others who have allegedly received unsolicited telephone calls from numerous defendants, including EngageTel, Inc. ("EngageTel") and Dennis Carlson ("Carlson") (collectively, "Defendants"), despite being on the National "Do Not Call" Registry.[1] Spiegel maintains that the telephone calls at issue were made in violation of the Telephone Consumer Protection Act and the Illinois Consumer Fraud and Deceptive Business Practices Act, and that they caused him both actual damages stemming from the need to invest in call-blocking equipment, and emotional damages stemming from aggravation and irritation associated with receiving unwanted phone calls. The Defendants have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), asserting that Spiegel has failed to plead any

---

[1] For purposes of this ruling, the court refers to Mr. Spiegel *and* the class that he purports to represent as simply "Spiegel." Similarly, the court refers to EngageTel and Mr. Carlson as "Defendants," despite the fact that there are other defendants who are parties to this lawsuit. Only defendants EngageTel and Carlson are bound by this *Memorandum Opinion and Order*.

facts that support his claim for relief. For the reasons set forth below, we deny the Defendants' motion in part and grant it in part.

I. BACKGROUND

Spiegel's 47-page Second Amended Complaint ("SAC") describes how the Defendants took part in a scheme to flood residential phone lines with thousands of "junk" calls containing fraudulent Caller ID information for purposes of scam marketing and to collect so-called "dip fees" associated with the calls. The most relevant allegations, along with the source of the information underlying them, if any, are set forth as follows:

- EngageTel is a shell corporation owned by Carlson. Carlson purchased EngageTel from a "company notorious for setting up business entity fronts, shell corporations, and shelf corporations." (SAC at ¶ 6). The source of this information is a *Reuter's* news agency article dated June 28, 2011 about Wyoming Corporate Services, the company Spiegel described as "notorious." (*Id*. at ¶ 7).

- Defendant ARG Group ("ARG") and/or its agent/representative Arash Akhavan ("Akhaven") "engaged" EngageTel for Caller ID spoofing services.[2] (*Id*. at ¶¶ 10-11). AGR markets energy services by telephone and has been sued several times for alleged violations under the Telephone Consumer Protection Act. (*Id*. at ¶ 52).

- Spiegel, who is on the National Do Not Call Registry, received numerous telemarketing calls made by or on behalf of ARG and/or Akhaven, as facilitated by EngageTel—who provided "platform services" that rendered it intrinsic to the generation of the calls. (*Id*. at ¶¶ 24-31). These calls provided misleading

---

[2] Caller ID "spoofing" occurs when the identification of a call on Caller ID appears as a person or entity other than the true originator of the call. This commonly occurs when the caller has a reason for wanting to misrepresent or conceal his identity.

- identification information by providing names such as "customer servic[e]" and "energy service" but not "ARG" or "Akhaven," and were intended to sell scam energy services. (*Id*. at ¶¶ 31-32). Spiegel provides as a source for some of this information the internet website "800notes.com," which is a free reverse phone number lookup site. (*Id*. at ¶ 33).

- Spiegel received numerous other phone calls generated by EngageTel and other defendants by means of an automatic dialer and/or recorded or artificial voice, despite having a call-blocking system in place. (*Id*. at ¶¶ 33, 43-45). Spiegel alleges this information based on his information and belief.

- EngageTel's business is the provision of virtual telephone numbers[3] for purposes of misrepresenting one's identity on Caller ID; as such, EngageTel traffics in "spoofing" services.[4] (*Id*. at ¶¶ 59-66). EngageTel is not the underlying carrier for the telephone calls for which it provides Caller ID services. (*Id*. at ¶¶ 61-62).

- EngageTel employs a system called "Caller ID Name" ("CNAM") that allows its clients (here, AGR and/or Akhaven) to customize their CNAM information so as to provide fraudulent or deceptive identification information and thereby leading

---

[3] A virtual number, also known as a DID ("direct inward dial") or access number, is a telephone number that lacks a directly associated telephone line. Virtual numbers can be programmed to forward phone calls (that come into that phone number) to different pre-set telephone numbers chosen by the client. Virtual numbers are very popular with call centers so that phone calls appear to have originated in one location when in reality they have occurred in another. Spiegel does not allege specifically how the DIDs worked in this case.

[4] Caller ID "spoofing" occurs when a caller deliberately falsifies the information transmitted to a Caller ID display to disguise his identity. Spoofing is often used as part of an attempt to trick someone into giving away valuable personal information so it can be used in fraudulent activity or sold illegally. *See* https://consumercomplaints.fcc.gov/hc/en-us/articles/202654304-Spoofing-and-Caller-ID

consumers to believe that they are getting a locally-placed phone call or one that comes from originators other than the true callers. (*Id*. at ¶¶ 67-77). Spiegel indicates that he derived pertinent information from "[p]re-suit investigation on internet sites," including 800notes.com. (*Id*. at ¶ 78).

- When a consumer receives a call from an EngageTel number, the consumer can call the number back, at which time he is connected to EngageTel and given the opportunity via a recording to be placed on a Do Not Call list; however, on Spiegel's information and belief, the consumer is not actually placed on a Do Not Call list but instead is providing her phone number to be "harvested" for resale. (*Id*. at ¶¶ 82-84).

- EngageTel receives a small "dip fee" associated with each CNAM query.[5] If the queried number is not in the phone carrier's database, the query is routed to the appropriate CNAM database, such as EngageTel's, for retrieval of the calling party's customer name. When this situation occurs, the recipient of the CNAM inquiry receives the dip fee. Because the individual dip fee is so small, and because dip fees are generated only on subscribers of landline caller-ID services, EngageTel relies on its clients to generate millions of phone calls using EngageTel numbers. Spiegel does not identify the source of this information, but the court notes that at least some of the information appears to be industry practice. (*Id*. at ¶¶ 89-100).

- EngageTel does not charge its clients for spoofing services because it expects its clients to generate dip fees through the placement of millions of phone calls. EngageTel is actively and constructively aware that its services are being used

---

[5] A CNAM query occurs when a phone call is placed to a number that subscribes to Caller ID. Telephone companies maintain a database of all of its customer's telephone numbers, along with the Caller ID information associated with that number. A CNAM query sets into place a series of events that allow the caller's information to be sent to the receiver of the phone call.

4

unlawfully because there is no legitimate purpose on the part of any EngageTel client to make a high volume of sales calls if not for purposes related to telemarking and illegal data mining, and because high volume call placement can only be done with the use of an automatic telephone dialing system ("ATDS"). (*Id*. at ¶¶ 100-102).

Defendants now move for a judgment on the pleadings, claiming that none of the four counts asserted against them (Count II: violation of the Telephone Consumer Protection Act; Count III: violation of the Illinois Consumer Fraud and Deceptive Business Practices Act; Count IV: unfair practice; and Count V: unjust enrichment) state a claim upon which relief may be granted. Defendants also argue that Spiegel has failed to set forth facts supporting claims of vicarious liability under the TCPA or facts sufficient to pierce EngageTel's corporate veil. Defendants maintain that Spiegel's allegations are "full of sound and fury" yet signify no wrongdoing by Defendants. The court addresses each of these arguments in turn.

## II. STANDARD OF REVIEW

A Rule 12(c) motion for judgment on the pleadings is "designed to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice." *Illinois Tool Works, Inc. v. Home Indem. Co*., 998 F. Supp. 868, 870 (N.D. Ill. 1998) (citing 5A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1367 (1990) (now 5C Fed. Prac. & Proc. Civ. § 1367 (3d ed.)). Stated somewhat differently, "[t]he motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court." 5C Fed. Prac. & Proc. Civ. § 1367 (3d ed.). In evaluating a Rule 12(c) motion, the court employs the same standards that apply when reviewing a motion to

dismiss for failure to state a claim under Rule 12(b)(6). *Buchanan–Moore v. Cnty. of Milwaukee,* 570 F.3d 824, 827 (7th Cir. 2009). Thus, the court must view the facts alleged in the complaint "in the light most favorable to the nonmoving party and will grant the motion only if it appears beyond doubt that the plaintiff cannot prove any facts that would support her claim for relief. *Id.* (internal citations and quotations omitted). Moreover, the complaint's factual allegations need only "be enough to raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp,* 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quotation marks omitted)). The court makes the assumption that all the allegations in the complaint are true, even if they are "doubtful in fact." *Twombly*, 550 U.S. at 555.

The court decides a Rule 12(c) motion for judgment on the pleadings based upon its review of the pleadings alone. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend,* 163 F.3d 449, 452 (7th Cir. 1998). The pleadings include the complaint, the answer, and any documents attached as exhibits, such as affidavits, letters, and contracts. *Id.* at 452–53; *see also* Fed. R. Civ. P. 10(c). The court may take judicial notice of matters of public record. *U.S. v. Wood,* 925 F.2d 1580, 1582 (7th Cir. 1991).

### III.     ANALYSIS

**A.     Count II:  The Telephone Consumer Protection Act (TCPA), 47 U.S.C § 227(c)(5)**

The Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 *et seq.* ("TCPA"), prohibits the use of certain communication practices that intrude upon consumers' privacy. *Mims v. Arrow Fin. Serv.,* 132 S. Ct. 740, 744 (2011); *Worley v. Mun. Collections of America, Inc.*, No. 14 C 2418, 2015 WL 890878, at *3 (N.D. Ill., Feb. 27, 2015). Section 227(c)(5) of the TCPA provides a private right of action on behalf of "[a] person who has received more than one

telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection…" 47 U.S.C. § 227(c)(5). For purposes of this case, the violations at issue involve the placement of phone calls to phone numbers listed on the National Do Not Call Registry, which is maintained by the Federal Trade Commission.

The Defendants argue that because EngageTel is not a telephone service provider and thus did not, and could not, take any of the steps necessary to initiate any of the calls at issue, it cannot be held liable under the TCPA. The Defendants take special note of Spiegel's admission that EngageTel was not the underlying carrier for any of the phone calls at issue here. Based on these facts, the Defendants ask the court to apply paragraphs 29 and 30 of the Federal Communication Commission's 138-page Declaratory Ruling and Order, *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC 15-72, ¶¶ 29-30 (July 10, 2015) ("FCC Ruling"), which discusses unwanted autodialed and prerecorded calls from telemarketers and raises the question of exactly *who* can be considered to have "made" or "initiated" a phone call. The Defendants argue that the FCC's analysis, as contained in this lengthy ruling, determines that they cannot be held liable under the TCPA because they were not so involved in placing the calls at issue as to be deemed to have "initiated" them. Spiegel argues to the contrary—that EngageTel was so intimately involved in making the phone calls as to have been deemed to have initiated them—although both parties agree that the FCC regulations on this point require a determination based on a totality of the facts and circumstances surrounding the placing of a particular call.

The court fails to see how this matter is properly resolved by means of a Rule 12(c) motion. Although some courts have dismissed similar counts against defendants on grounds that direct liability under the TCPA attaches only to the party that "physically" placed the phone call

7

at issue, the facts of this case are less clear-cut. *See, e.g., Toney v. Quality Resource, Inc*., 75 F. Supp. 3d 727, 742 (N.D. Ill. 2014) (plaintiff failed to make a claim for direct liability under the TCPA where the parties did not dispute that the defendant/ telemarketer physically placed the allegedly unlawful phone calls, and not the defendants who hired the telemarketer to promote discount services on their behalf); *Smith v. State Farm Mutual Automobile Ins. Co*., 30 F. Supp. 3d 765, 771 (N.D. Ill. 2014) (plaintiffs failed to properly allege direct liability under the TCPA where the defendants (large insurance agencies) were not involved in the placing of the unwanted phone calls by a telemarketer; the fact that the defendants' insurance agents had some input into the timing and manner of the calls was not enough to attribute liability to the defendants). In this case, the facts do not reveal—at least not yet—a neat demarcation among the defendants suggesting that a certain defendant or defendants acted prototypically as the telemarketer, while other defendants were a step removed from placing the phone calls by employing the telemarketer to place the calls for them. The FCC regulations do open the door to the possibility of a "seller" (meaning "the person or entity on whose behalf a [telemarketing] call or message is initiated") being so involved in the placing of the phone call as to be directly liable for initiating it. *See FCC Ruling*, ¶¶ 27-28. Here, Spiegel alleges that the Defendants' business is to provide virtual telephone numbers for telemarketers to use, and that the Defendants' business is in fact the provision of telephone numbers and services directly aligned with the goal of misrepresenting Caller ID information. This scenario is quite different from the facts of *Smith and Toney*. It is premature to rule at this early point in the litigation that the Defendants can under no circumstances be found to be so intimately involved in the placing of the phone calls to Spiegel as to be deemed an initiator, particularly when discovery has yet to be completed.

As for the Defendants' additional argument that the vast majority of Spiegel's TCPA allegations are completely unsupported by facts within his knowledge or his counsel's knowledge, the court finds that Count II of the SAC satisfies the pleading requirements of Rule 8. Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, provided the claim asserted is plausible on its face and does not contain unsupported legal conclusions. *Twombly,* 550 U.S. at 555. The facts Spiegel alleges in the SAC pertaining to Count II are more than mere "threadbare recitals of a cause of action's elements." *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009) (citing *Twombly,* 550 U.S. at 555). Spiegel has set forth detailed information regarding the phone calls he received and his theory for how the Defendants played a role in the placement of these phone calls. Allegations based on "information and belief" are generally sufficient to meet the liberal pleading requirements of Rule 8 (with the exception of claims of fraud, which are governed by the heightened pleading requirements of Rule 9). *Trustees of the Auto. Mechanics' Indus. Welfare & Pension Funds Local 701 v. Elmhurst Lincoln Mercury*, 677 F. Supp. 2d 1053, 1055 (N.D. Ill. 2010). While many of Spiegel's allegations are supported by online investigations at such sites as 800notes.com, Rule 11 is always a counterweight to Rule 8's liberal standards by requiring attorneys to make a "reasonable inquiry" into the facts and law of a complaint before filing it in court. *See* Fed. R. Civ. P 11.

The court does agree with the Defendants on one point, however: the sufficiency of Siegel's allegations as to vicarious liability under the TCPA. Although this statute allows for vicarious liability, Spiegel has not sufficiently alerted the Defendants that he intends to pursue this avenue of relief. *See In re Joint Petition filed by Dish Network, LLC,* 28 F.C.C.R. 6574 at ¶

9

1 (2013) ("Dish Network") ("section 227(c)(5) contemplates, at a minimum, the application of such principles of vicarious seller liability for do-not-call violations"); *Smith*, 30 F. Supp. 3d at 773 (The FCC has concluded that an entity may be vicariously liable for TCPA violations "under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification") (quoting *Dish Network*, ¶ 28)). Spiegel directs the court's attention to paragraphs 22, 37, 41, 43-45, and 48-49 of the Amended Complaint as proof of the sufficiency of his allegations, but the court does not agree. The SAC, as filed with the court, completely lacks paragraphs 36-42. They are simply missing, and the same is true for the First Amended Complaint. The other paragraphs (22, 43-45, 48-49) of both complaints deal with matters unrelated to agency principles or vicarious liability in general. Spiegel is free to amend his pleading to include allegations pertaining to vicarious liability.

B.   **Count III: The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2**

The Illinois Consumer Fraud and Deceptive Business Practices Act (ILCFA), 815 ILCS 505/1 *et seq.*, is "a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.,* 775 N.E.2d 951, 960 (Ill. 2002). Section 505/2 of the act, governing "unlawful practices," provides as follows:

> § 2. Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

815 ILCS 505/2.

To state a claim in a private action under the ILCFA, a plaintiff must allege the following elements: (1) the defendant's deception; (2) the defendant's intention that the plaintiff rely on that deception; (3) the deception occurred in the course of conduct involving trade or commerce; (4) the plaintiff suffered actual damage; and (5) the deception proximately caused the damages. *Aliano v. Louisville Distilling Co.*, LLC, 115 F. Supp. 3d. 921, 929-30 (N.D. Ill. 2015) (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005). Because the ILCFA is a fraud statute, Spiegel is required to state with particularity the circumstances that constitute fraud. Fed. R. Civ. P. 9(b). Although "the precise level of particularity required under Rule 9(b) depends upon the facts of the case, the pleading "ordinarily requires describing the who, what, when, where, and how of the fraud." *Camasta v. Jos. A. Bank Clothier's, Inc.* 761 F.3d 732, 737 (7th Cir. 2014).

Here, Spiegel claims that the Defendants violated the ILCFA by: (1) misrepresenting the caller's true identity, misrepresenting the area code of the phone call, and falsely identifying itself by a number different from that of the actual caller; (2) inducing the phone recipient to either answer the phone or to call back under the belief that he would be informed about energy-related services or, in the alternative, be added to a Do Not Call list (that did not really exist); (3) creating the impression that the caller had a pre-existing relationship with the phone recipient and intending for the phone recipient to rely on this impression; and (4) knowingly offering services to its clients for free, and knowingly facilitating the making of spam calls, in furtherance of the goal of collecting dip fees. Spiegel alleges actual damages in the form of the cost to block unwanted calls and in the diminished value of call-blocking due to the changing nature of the telephone numbers used, as well as aggravation and other emotional damages. The Defendants,

11

meanwhile, argue on multiple grounds that Spiegel has not properly plead the requirements of the ILCFA and cannot survive a Rule 12(c) dismissal. The court addresses each required element of the ILCFA in turn.

### 1. Deceptive Act

First, the Defendants maintain that Spiegel has not set forth sufficient facts suggesting that they engaged in a deceptive act. When determining whether a practice is deceptive in violation of the ILCFA, Illinois courts consider: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson,* 775 N.E.2d at 961 (quoting *Federal Trade Comm'n v. Sperry & Hutchinson Co.,* 405 U.S. 233, 244 n.5 (1972)).

#### a. Offends Public Policy

"A practice which has not previously been held to be unlawful can offend public policy if it violates a standard of conduct set out by an existing statute or common law doctrine that typically governs such situations." *W. Ry. Devices Corp. v. Lusida Rubber Prod., Inc.*, No. 06 C 0052, 2006 WL 1697119, at *4 (N.D. Ill., June 13, 2006). The TCPA prohibits the making of any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice to residential telephone subscribers. 47 U.S.C. § 227(b)(1)(A). The Truth in Caller ID Act of 2009, Pub. L. 111–331, 124 Stat. 3572, which inserted a new subsection (e) into the TCPA, provides that "[i]t shall be unlawful for any person within the United States, in connection with any telecommunications service or IP–enabled voice service, to cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value, unless such transmission is

exempted pursuant to paragraph (3)(B)." *See also Mims,* 132 S. Ct. at 745 n.2. Taking Spiegel's allegations as true—that the Defendants used an automatic dialing device and purposefully "spoofed," or customized, the information that appeared on Spiegel's Caller ID (both the phone number and the information identifying the caller) to obscure or misrepresent the geographic and actual identity of the caller so as induce the call recipient to answer his phone and thereby provide personal information—the court finds that the Defendants' alleged conduct offends public policy.

### b. Oppressive Practice

A practice may be considered immoral, unethical, oppressive, or unscrupulous if it imposes a lack of meaningful choice or an unreasonable burden on the consumer. *Garrett v. Rentgrow, Inc.,* No. 04 C 8309, 2005 WL 1563162 at *3 (N.D. Ill., Jul. 1, 2005). Making phone calls that circumvent call-blocking devices and transmit misleading or inaccurate caller information certainly can be considered an oppressive practice.

### c. Substantial Injury

The injury complained of must be substantial. The doctrine of *de minimis non curat lex* ("the law doesn't concern itself with trifles") establishes a bar to recovery when the damages alleged are tiny and trifling. *See, e.g., Brandt v. Bd. of Educ. of City of Chi.,* 480 F.3d 460, 465 (7th Cir. 2007) (doctrine of *de minimis non curat lex* acted as bar to recovery where alleged damages were miniscule to point of nonexistence); *Dwyer v. Am. Express Co.,* 652 N.E.2d 1351, 1357 (Ill. Ct. App. 1995) (concluding that receiving unwanted mail, without more, is not "damage" for ILCFA purposes). The court does not make such a presumption in this case. Not only is the court unpersuaded that the costs Spiegel incurred are miniscule, but the court also finds the application of the *de minimis* doctrine to be in conflict with the ILCFA's remedial

13

purpose. To find otherwise would permit defendants to freely engage in unfair practices so long as the effects were "thinly" spread out over a large population of victims. *See Centerline Equip. Corp. v. Banner Pers. Serv., Inc.*, 545 F. Supp. 2d 768, 780 (N.D. Ill. 2008) (loss of computer paper and toner from unwanted fax was an injury); *People ex rel. Hartigan v. Stianos,* 475 N.E.2d 1024, 1029 (Ill. Ct. App. 1985) (overcharging customers only a few cents each can cause substantial losses when taken in the aggregate); *but see Stonecrafters, Inc. v. Foxfire Printing & Packaging*, 633 F. Supp. 2d 610, 613-14 (N.D. Ill. 2009) (unwanted one-page fax gave rise to *de minimis* damages where aggregate harm approach of *Centerline* conflicted with general rule that plaintiff must have a valid cause of action in his own right before he can bring a claim on behalf of a putative class). Accordingly, the court finds that Spiegel has pled substantial injury.

In sum, the court finds that Spiegel has satisfied all three elements needed to plead the existence of a deceptive act under the ILCFA.

### 2. Reliance on the Deceptive Act

Next, the Defendants contend, somewhat circularly, that Spiegel has failed to allege that the Defendants had any intent that others would rely on any purported deception. Further, the Defendants allege that Spiegel has failed to state that he actually was deceived by the incoming phone calls; for instance, that he actually answered one of the offending phone calls because of the information posted to his phone; and/or that as a consequence of answering the phone, he attempted to add himself to a non-existent Do Not Call list. Addressing the second argument first, Illinois courts interpreting the ILCFA have repeatedly held that plaintiffs need not show actual reliance. *Zinser v. Rose*, 614 N.E.2d 1259, 1264 (Ill. Ct. App. 1993) ("Significantly, the [ILCFA] does not require actual reliance."); *Harkala v. Wildwood Realty, Inc*., 558 N.E.2d 195, 199 (Ill. Ct. App. 1990) (under the ILCFA, the plaintiff need not show actual reliance nor

diligence in ascertaining the accuracy of the misstatements). Instead, what is required of Spiegel is that he plead facts alleging that the Defendants intended for him to rely on the information misrepresented on the phone, regardless of whether he actually did so. To this end, Spiegel alleged that the Defendants purposefully customized the information that appeared on his Caller ID so that he would be induced to answer the phone or call back. Taking these allegations as true for purposes of the motion for judgment on the pleadings, the court finds Spiegel sufficiently alleged the second element of the ILCFA: that the Defendants intended for Spiegel to rely on their deceptive acts.

   3.   **Actual Damages**

Finally, the Defendants argue in passing that Spiegel failed to allege any actual damages. The ILCFA requires that a plaintiff show that he suffered actual damages as a consequence of the defendant's violation of the Act. *Camasta*, 761 F.3d at 739. Actual damages are those that arise from "purely economic injuries." *Thrasher-Lyon v. Illinois Farmers Ins. Co.*, 861 F. Supp.2d 898, 912 (N.D. Ill. 2012) (quotations omitted). Damages for emotional distress, aggravation, invasion of privacy, and other forms of mental anguish are actionable under the ILCFA only when coupled with actual economic damages. *Nelson v. Ashford University, LLC*, No. 16-cv-3491, 2016 WL 4530325, at *3 (N.D. Ill., Aug. 29, 2016). Here, Spiegel alleged in the SAC that he suffered "significant and ongoing stress, annoyance, and emotional distress," as well as actual damages due to aggravation and inconvenience, the cost of a call-blocking device or devices, and the diminished value of his call-blocking device(s) caused by the ability of the Defendants to circumvent this device. Spiegel's actual, economic damages are those that resulted in monetary costs to him as a result of the unwanted phone calls. The diminished value of the device is

15

harder to quantify, but the court need not do so at this juncture since Spiegel has sufficiently alleged actual damages in the form of equipment purchases.

For the foregoing reasons, the court finds that Spiegel has set forth a claim for relief under the ILCFA.

**C.     Count IV:  Unfair Practice**

Count IV of the SAC alleges unfair practice under the ILCFA.  This count is essentially a pleading in the alternative to Count III's allegation of deceptive practice under the ILCFA:  a plaintiff may allege that conduct is unfair under ILCFA without also alleging that the conduct is deceptive.  *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010); *Saunders v. Mich. Ave. Nat'l Bank,* 662 N.E.2d 602, 608 (Ill. Ct. App. 1996).  Whether a practice or action is unfair depends on a case-by-case analysis of the same three-part test set forth above in Part B1(a)-(c): whether the conduct violates public policy; is oppressive, immoral or unethical; and causes substantial injury.  *Batson v. Live Nation Entertainment*, 746 F.3d 827, 830 (7th Cir. 2014).  The Illinois Supreme Court has stated that "[a] practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three."  *Robinson,* 775 N.E.2d at 961.  Adopting the reasoning set forth above pertaining to a deceptive act, the court finds that Spiegel also has set forth allegations sufficient to withstand the Defendants' motion to dismiss Count IV.

**D.     Count V:  Unjust Enrichment**

Count V of the SAC alleges that the Defendants were unjustly enriched through the collection of dip fees generated as a consequence of the Spiegel's telephone carrier "dipping" into the originating telephone company's CNAM database (here, EngageTel's) to secure Caller ID information to display on Spiegel's phone.  The Defendants allege in their motion that

16

Spiegel's unjust enrichment claim is deficient because Spiegel has not alleged that he is entitled to the dip fees. The Defendants also point out in their reply brief that Spiegel failed to respond to their arguments on this point and thus has waived any argument that the unjust enrichment claim should survive dismissal.

To state a cause of action based on a theory of unjust enrichment, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,* 545 N.E.2d 672, 679 (Ill. 1989). A claim of unjust enrichment is not a separate cause of action, however. *Martis v. Grinnell Mut. Reinsurance Co.,* 905 N.E.2d 920, 928 (Ill. Ct. App. 2009). Rather, when a claim of unjust enrichment arises out of the same conduct alleged in another claim, the unjust enrichment claim stands or falls with the other claim. *Cleary v. Phillip Morris Inc.,* 656 F.3d 511, 517 (7th Cir. 2011) (citing *Ass'n Benefit Servs. v. Caremark Rx, Inc.,* 493 F.3d 841, 855 (7th Cir. 2007)). Here, Siegel's theory of unjust enrichment arises out of the same conduct as Counts III and IV. Because the court denies the Defendants' motion to dismiss Count Counts III and IV, the court also denies the motion to dismiss Count V.[6]

## E. Piercing the Corporate Veil as to Defendant Carlson

Finally, the Defendants argue that they are entitled to a judgment the pleadings on Spiegel's claim to pierce EngageTel's corporate veil. The court notes that Spiegel did not allege a separate count on this matter, but instead set forth his allegations regarding piercing the corporate veil in the "Parties" section of the SAC. Specifically, in paragraphs six and nine,

---

[6] That being said, the court questions the viability of this claim. It is not evident to the court that Spiegel has suffered an actual detriment related to the dip fees. However, the court will allow the claim to proceed at this early point in the litigation in the hope that discovery will flesh out this allegation.

Spiegel alleges that EngageTel is shell corporation that Carlson purchased from a business "notorious for setting up business entity fronts, shell corporations, and shelf corporations," and that EngageTel is "under-capitalized, disregards corporate formalities, is the mere alter ego of Carlson, and as more fully alleged herein was controlled and operated in such a manner as to commit fraud." (SAC ¶¶ 6, 9). In support of the allegation that Carlson purchased EngageTel from a "notorious" company, Spiegel cites a *Reuter's* news article that discusses a company called Wyoming Corporate Services ("WCS"), whom Spiegel originally named as a defendant in the original complaint but later dismissed.

Spiegel alleges fraud as the basis for piercing the corporate veil. This court noted in *Deschepper v. Midwest Wine & Spirits, Inc.*, 84 F. Supp. 3d 767, 781 (N.D. Ill. 2015), that the Seventh Circuit has yet to opine about the appropriate pleading standard for veil piercing when fraud allegations are in play. Some courts have applied the Rule 9(b) particularity requirements to fraud-based veil piercing arguments, while others have applied the lower notice requirements of Fed. R. Civ. P. 8(a). *Chapel Ridge Inv., L.L.C. v. Petland Leaseholding Co., Inc.,* No. 1:13–CV–00146–PPS, 2013 WL 6331095, at *6 (N.D. Ind. Dec. 4, 2013) (collecting cases). At any rate, under Illinois law, to pierce the corporate veil, the plaintiff must demonstrate: "(1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) adhering to the fiction of a separate corporate existence would sanction a fraud, promote injustice, or promote inequitable consequences." *See Auto. Fin. Corp. v. Joliet Motors, Inc.,* 761 F.Supp.2d 789, 792 (N.D. Ill. 2011) (quoting *Int'l Fin. Servs. Corp. v. Chromas Tech. Canada, Inc.,* 356 F.3d 731, 736 (7th Cir. 2004)).

Regardless of whether Rule 8 or Rule 9 is applied here, the fact remains that the allegations as to this point are terribly thin. Spiegel asserts only a few legal conclusions, and no factual allegations, to support his assertion that EngageTel's corporate veil should be pierced. The allegations involving WCS are poorly connected, mostly because Spiegel has dismissed WCS but is still trying to use the company as a basis upon which to keep Carlson in the lawsuit. Barebones recitals of the elements of a cause of action, supported only by conclusory statements, do not demonstrate plausibility of entitlement to relief. *See Iqbal*, 556 U.S. at 678. The court finds no factual allegations suggesting that the separate personalities of the corporation and the individual no longer exist. As there is no separate count to dismiss, the court simply advises Spiegel that he has not alleged facts sufficient to satisfy the pleading requirements of even Rule 8 as to piercing the corporate veil. *See Flentye v. Kathrein*, 485 F. Supp. 2d 903, 913 (N.D. Ill. 2007) (stating that if the complaint "fairly alleges an entity exists as the alter ego of another and provides factual manifestations suggesting the existence that the two operate as a single entity, a motion to dismiss will be denied") (citations omitted)). Spiegel is free to replead this matter with greater particularity should he wish to do so. In the meantime, defendant Carlson is dismissed from this action as his presence in the lawsuit is predicated solely on Spiegel's attempt to set aside corporate formalities, which we have now rejected.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' motion for judgment on the pleadings pursuant to Rule 12(c) is denied as to Counts II, III, IV, and V. The motion is granted as to Spiegel's freestanding allegations regarding piercing EngageTel's corporate veil. Insofar as the court finds the Second Amended Complaint's factual assertions insufficient on this point, Defendant Carlson is dismissed from the suit.


Date:   September 29, 2016

                                                                                        /s/_____
                                                                                        Joan B. Gottschall
                                                                                       United States District Judge